UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 3:24-cv-30031KAR

| | |
|---|---|
| TANIA CABRERA | ) |
|     Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| AMHERST-PELHAM REGIONAL | ) |
| SCHOOL DISTRICT, DIEGO SHARON | ) |
| SARA BARBER-JUST, MARTA GUEVARA | ) |
| MICHAEL MORRIS, CELIA MAYSLES, | ) |
| and JULIE WOYNAR, Individually and in their | ) |
| capacities as Employees of the | ) |
|     Defendants | ) |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

NOW COME the Defendants, Amherst-Pelham Regional School District (the "District"), Diego Sharon, Sara Barber-Just, Marta Guevara, Celia Maysles, and Julie Woynar, who hereby move to dismiss Count II and Count IV.

### FACTS

Solely for purposes of Defendants' Partial Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants accept as true the facts, as opposed to conclusions, alleged in Plaintiff's Amended Complaint.

### STANDARD OF REVIEW

The standard of review announced by the Supreme Court of the United States in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and confirmed by *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) requires that:

> To state a claim, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

659323

550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); "'naked assertions devoid of further factual enhancement'" need not be accepted, *Maldonado v. Fontanes*, 568 F.3d 263, 266 (1st Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949); and "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal," *Tambone*, 597 F.3d at 442.

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 771 (1st Cir. 2011). In analyzing whether a complaint states a plausible claim for relief, "To begin, the court must strip away and discard the complaint's conclusory legal allegations. Next, the court must determine whether the remaining factual content permits the reasonable inference that the defendant is liable for the misconduct alleged." *Shay v. Walters*, 702 F.3d 76, 82 (1st Cir. 2012) (citations omitted; internal quotation marks omitted).

In determining whether a complaint states a claim upon which relief can be granted, the Court may consider documents relied on or attached to a complaint and matters of public record. See *Lydon v. Local 103, Int'l. Bhd. of Elec. Workers*, 770 F.3d 48, 53 (1st Cir. 2014); *Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008); *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993).

## ARGUMENT

**I.  COUNT II, ALLEGING RETALIATION UNDER TITLE VII AGAINST DIEGO SHARON, FAILS TO STATE CLAIM UPON WHICH RELIEF MAY BE GRANTED**

In Count II, Plaintiff alleges that Diego Sharon retaliated against her in violation of Title VII anti-retaliation statute. Individual defendants may not be found liable under Title VII, and this Charge must be dismissed as against Sharon. *Fantini v. Salem State College*, 557 F.3d 22, 30 (1st Cir. 2009). ("[t]he statutory scheme [of Title VII] itself indicates that Congress did not intend to impose individual liability on employees… Consequently, we find that there is no individual employee liability under Title VII").

659323

## II. COUNT II, ALLEGING RETALIATION UNDER TITLE VII AGAINST THE DISTRICT, FAILS TO STATE CLAIM UPON WHICH RELIEF MAY BE GRANTED

In order to establish a *prima facie* case for retaliation under 42 U.S.C.A. § 2000e-3, a Plaintiff must show that "(1) she engaged in protected activity; (2) she suffered some materially adverse action; and (3) the adverse action was causally linked to her protected activity." *Dixon v. Int'l Bhd. of Police Officers*, 504 F.3d 73, 81 (1st Cir. 2007). Plaintiff has failed to establish a claim for retaliation against Amherst-Pelham Regional Public School District because: (1) Plaintiff fails to allege "protected activity" as established by Title VII, and (2) the District took no "adverse employment action" against Plaintiff after she engaged in what she purports to be protected activity.

### A. Plaintiff's grievance is not "protected activity" under Title VII

Title VII provides that "It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter." In other words, it is unlawful for an employer to retaliate against an employee for opposing any practice that violates Title VII. 42 U.S.C.A. § 2000e-3; *Dixon*, 504 F.3d at 81. To establish participation in a protected activity "the plaintiff need not show that the conditions [they] opposed actually amounted to a violation of Title VII." *Fantini v. Salem State Coll.*, 557 F.3d 22, 32 (1st Cir. 2009). Rather, they "must demonstrate only that they had 'a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" *Id.* citing *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134 (2nd Cir. 1999).

In the Amended Complaint, the action Plaintiff alleges is protected activity is a union grievance she filed contesting her non-renewal:

> On May 30, 2023, Plaintiff received a letter stating that her contract of employment would not be renewed for the upcoming school year.

659323

> Plaintiff then filed a grievance with her union on or about June 23, 2023, stating that she was non-renewed without just cause and without an evaluation.

(See, Amended Complaint, ¶¶ 47 & 48). In Count II, Plaintiff then alleges, "The adverse action would not have occurred but for a retaliatory motive against Plaintiff for filing a grievance over her wrongfully being nonrenewed." (See, Amended Complaint, ¶ 82).

Plaintiff alleges that the Union's grievance on her behalf was protected activity, but that grievance does not constitute protected activity under Title VII. The grievance states the filing was, "Re: Non-renewal of Non-PTS Teachers without Evaluation," and the "Statement of Grievance: APEA unit A employees Tania Cabrera and … received non-renewal notices without evaluation or just cause." (See, Tania Cabrera Grievance, attached as Exhibit A).[1] The grievance filing then identifies certain contract provisions and laws Plaintiff believes were violated. Specifically, she asserts Article 2 and Article 13, Sections A and B of the Collective Bargaining Agreement; and M.G.L., c.71, § 38 and M.G.L. c.150E, were breached and/or violated. (See, Exhibit A). None of the contractual provisions and laws identified amount to violations of Title VII. Both M.G.L., c.71, § 38 and M.G.L. c.150E govern collective bargaining agreements, while the contractual provisions outline the District and School Committee' ability to create policies, and the procedures for termination. (See Collective Bargaining Agreement, attached as Exhibit B). Due to the clear absence of any allegation of discriminatory conduct in the grievance or its referenced materials, the grievance cannot be considered protected activity. See, *Fantini*, 557 F.3d

---

[1] Attaching the grievance, Collective Bargaining Agreement, and other documents relied upon in the Amended Complaint do not convert it to a motion for summary judgment. *Lydon v. Local 103, Int'l. Bhd. of Elec. Workers*, 770 F.3d 48, 53 (1st Cir. 2014); *Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008); *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993). *Dubliner, Inc. v. E. Coast Tavern Grp., Inc.*, F. Supp. 3d (D. Mass., 2023).

659323

at 32 (the plaintiff failed to establish that "she engaged in a protected activity within the meaning of the statute" because a violation of the 'Conflict of Interest Law and Financial Disclosure Law,' for changing a general ledger system, "is not an unlawful employment practice under Title VII").

> **B.    Defendants took no "adverse action" against Plaintiff after the purported "protected activity."**

Assuming *arguendo* that the union grievance constitutes protected activity, which it does not, Plaintff's claim still fails because all adverse action taken by the District occurred prior to the filing of the union grievance, and in fact the adverse action was what the grievance was contesting.

i.    <u>Plaintiff's non-renewal occurred prior to the alleged protected activity.</u>

Retaliation claims under Title VII and Massachusetts state law require proof that the "protected activity was a but-for cause of the alleged adverse action by the employer." *Stratton v. Bentley Univ.*, 113 F.4th 25, 44–45 (1st Cir. 2024) quoting, *Theidon v. Harvard Univ.*, 948 F.3d 477, 506 (1st Cir. 2020). Put simply, a plaintiff must show that their employer would not have taken the adverse action but for a desire to retaliate. *Id.* citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 359-60 (2013).

Here, Plaintiff attempts to establish her prima facie case of retaliation by alleging an adverse employment action occurred **on May 30, 2023**, when she received notice that her contract would not be renewed. (See, Amended Complaint , ¶ 47) (emphasis added). She then alleges that she took protected activity, when she "filed a grievance with her union **on or about June 23, 2023**, stating that she was non-renewed without just cause and without an evaluation." (See, Amended Complaint, ¶ 48) (emphasis added). See *Stratton,* 113 F.4th at 44–45 (ruling plaintiff did not satisfy the requirements of "but-for" causation, because plaintiff failed to complain of discrimination prior to being placed on a performance improvement plan).

Based on the sequence of these events, it would have been impossible for the Defendant to have retaliated against Plaintiff for her grievance as her non-renewal predates her grievance filing.

659323

Therefore, Plaintiff has not satisfied the requirements of "but-for" causation, because "without evidence of [the District's] knowledge of the protected conduct, the adverse action could not have been caused by a desire to retaliate against [Plaintiff]." See, *Stratton,* 113 F.4th at 44–45 quoting, *Velazquez-Ortiz v. Vilsack*, 657 F.3d 64, 73 (1st Cir. 2011).

    ii.    <u>The internal investigation was not an "adverse action" because it did not "materially disadvantage" Plaintiff</u>

To the extent that Plaintiff alleges that conducting an independent investigation into her after her union grievance was an actionable adverse action, that allegation cannot support a claim of retaliation. An adverse employment action must be "material" as opposed to "trivial" and must be "substantial enough to have materially disadvantaged an employee" based on an objective, reasonable person standard. *Yee v. Mass. State Police*, 481 Mass. 290, 296 (2019). Courts have noted that, "workplaces are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." *Blackie v. State of Me.*, 75 F.3d 716, 725 (1st Cir. 1996). To "materially disadvantage" an employee, courts have stipulated that evidence of "(1) tak[ing] something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities," or, "(2) withhold[ing] from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service," are examples of the type of significant actions needed for an employee to be "materially disadvantaged." *Id*. at 725.

Placing an employee on paid administrative leave pending the results of an independent investigation is a well-established acceptable practice for an employer, and "is generally regarded not to be an adverse employment action." *Testa v. Town of Madison*, 2005 WL 2365319 (D. Me. Sep. 26, 2005); see also, *Gonzalez v. Otero*, 172. F. Supp. 3d 477 (D.P.R. 2016) ("Placement of an employee on paid administrative leave pending an investigation does not constitute an adverse

659323

employment action, does not create a protected property interest, and does not give rise to a due process violation"); Massachusetts Commission Against Discrimination, *Guidelines on 151B: Sexual Harassment in the Workplace* (listing the possibility of placing the accused on paid administrative leave pending the results of an investigation as a potentially appropriate interim measure); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 544-545 (1985) ("[I]n those situations where the employer perceives a significant hazard in keeping an employee on the job, it can avoid the problem by suspending with pay").

Here, Plaintiff does not allege any facts that would require departure from the general rule that an internal investigation is not an adverse action. Beyond mere conclusory statements, no facts are alleged that would give color to Plaintiff's claim that this investigation "materially disadvantaged" her. Absent any allegations of why the investigation disadvantaged the plaintiff, it cannot be deemed an adverse action and is nothing more than a rudimentary activity in response to a third-party complaint.

### III. COUNT IV ALLEGING DEFAMATION AGAINST SARA BARBER-JUST MUST BE DISMISSED BECASUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiff has alleged that Defendant Sara Barber-Just published defamatory statements about the Plaintiff in *The Graphic*, the school region's student newspaper. Plaintiff alleges that Barber-Just "orchestrated a hit-piece to be published in the school newspaper." (See, Amended Complaint, ¶ 34). A copy of the article published in the Graphic is attached hereto as <u>Exhibit C</u>. This claim must fail because Barber-Just made no defamatory statements about the Plaintiff, and the publication of *The Graphic* Article does not impute liability onto her for defamation. Further, Barber-Just is explicitly protected from liability arising from student speech.

#### A.     *The Graphic Article was not a statement published by Barber-Just.*

659323

As an initial matter, *The Graphic* Article contains no quotes by Barber-Just, nor is Barber-Just an author of the article. (See, Exhibit C). *The Graphic* is the student newspaper of Amherst Regional High School, and the Article was authored and edited by Amherst Regional High School students. Specifically, the Article states it was authored, "By The Graphic Staff**" and it states "The following students contributed to sourcing, researching, or writing this investigative report: T.D. (lead reporter), I.B., A.C., A.C., L.C, V.C-C., W.G., C.M., L.L., K.P., J.S-E., J.L., S.K. L., J.S., T.W., D.W." (See, Exhibit C). Throughout the entirety of the Article neither Barber-Just nor any other faculty member is identified as a contributor.

Plaintiff's theory appears to be that as a faculty advisor for *The Graphic*, Barber-Just is liable. The Amended Complaint states only in reference to Barber-Just:

29. Unhappy that Plaintiff, Dykes and Santos received no punishment, Defendant Barber-Just emailed Defendants Morris, Guevara and Sharon just two days later, on April 27, 2023, stating that she read an article about alleged transphobia at ARMS in the Hampshire Gazette.

30. In this same email, Defendant Barber-Just stated that her journalism students wished to interview counselors at the middle school.

31. Further, Defendant Barber-Just shared a social media post that was "reposted" by Santos, and suggested within the body of the email that Santos should lose his job.

34. … Defendant Barber-Just orchestrated a hit-piece to be published in the school newspaper, The Graphic.

37. Before Defendant Barber-Just published her article in The Graphic, Defendant Morris informed her that these were just rumors, that Santos and Dykes were under investigation and asked her not to publish it.

38. Defendant Barber-Just published it anyway.

103. The statements made by Defendant Barber-Just in The Graphic article (published in the school regions' newspaper), the statements made by Defendants Sharon and Maysles regarding Plaintiff's "misgendering", and the statements made by Defendants Woynar and Maysles regarding Plaintiff's being engaged in "conversion therapy are not only false, but directly affected Plaintiff's reputation, personally and professionally.

(See, Amended Complaint, ¶ 29, 30, 31, 34, 37, 38, 103).

Paragraphs 29 and 30 of the Amended Complaint allege Barber-Just shared with other faculty that she had read a newspaper article regarding alleged transphobia in Amherst Regional Middle School ("ARMS"), and that her journalism students wished to follow up on the allegations. By its own plain language, the Amended Complaint alleges that Barber-Just was facilitating a story that her students wanted to pursue.

Additionally, paragraphs 34, 37, 38, and 103 are conclusory allegations, which fail to include the specific actions taken by Barber-Just which "orchestrated" or "published" the Article. Specifically, there are no factual allegations that Barber-Just acted beyond her role as faculty advisor. Plaintiff cannot rely on mere conclusions to support her claim. *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724 (1st Cir. 1992).

Finally, by statute, Barber-Just was limited in her ability to censor the students writing and editing the Article. M.G.L. c. 71 § 82 ("The right of students to freedom of expression in the public schools of the commonwealth shall not be abridged, provided that such right shall not cause any disruption or disorder within the school."); *Lange v. Diercks*, 808 N.W.2d 754 (Iowa Ct. App. 2011) (interpreting a statute with nearly identical language to M.G.L. c. 72, § 82 as requiring the removing of discipline issued to a journalism teacher at a public high school for failure to censor purportedly inappropriate articles in a student newspaper").

    **B.**    ***Barber-Just is Protected from Liability by M.G.L. c. 71, § 82***

By statute, Barber-Just is insulated from liability for protected student speech. M.G.L. c. 71 § 82 states in part:

> The right of students to freedom of expression in the public schools of the commonwealth shall not be abridged, provided that such right shall not cause any disruption or disorder within the school. Freedom of expression shall include without limitation, the rights and responsibilities of students, collectively and individually,… (b) to write, publish and disseminate their views, …

> *No expression made by students in the exercise of such rights shall be deemed to be an expression of school policy and no school officials shall be held responsible in any civil or criminal action for any expression made or published by the students.*
>
> For the purposes of this section and sections eighty-three to eighty-five, inclusive, the word student shall mean any person attending a public secondary school in the commonwealth. The word school official shall mean any member or employee of the local school committee.

(emphasis added)  Under the plain meaning of this statute, Barber-Just is immune from liability. A student article is precisely the sort of student expression protected by Section 82. See *Pyle By and Through Pyle v. South Hadley School Committee*, 861 F. Supp 157, 168 (D. Mass 1994) (including "articles in a student-run newspaper" as an example of student speech governed by Section 82). Barber-Just was indisputably an employee of the School District in supervising the student newspaper, and accordingly, Count V alleging defamation against Barber-Just must be dismissed.

### IV. COUNT IV ALLEGING DEFAMATION AGAINST DIEGGO SHARON, CELIA MAYSLES, AND JULIE WOYNAR MUST BE DISMISSED BECASUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Count IV of the Amended Complaint further alleges relief against Defendants Diego Sharon, Celia Maysles, and Julie Woynar, alleging that they defamed Plaintiff by stating she misgendered students and/or engaged in conversion therapy. These allegations must be dismissed because Sharon's, Maysles', and Woynar's speech was privileged.

> **A.  *Allegations that Diego Sharon and Celia Maysles stated to an internal investigator that Plaintiff "misgendered students" do not give rise to defamation claim because the communication was privileged.***

In the employment context, an employer has a conditional privilege to disclose otherwise defamatory information concerning an employee when the publication is reasonably necessary to

659323

serve the employer's legitimate interest in the fitness of an employee to perform his or her job.[2] *Foley v. Polaroid Corp.*, 400 Mass. 82, 94 (1987); *Bratt v. Int'l Bus. Machs. Corp.*, 392 Mass. 508, 512-13 (1984). This privilege "is important in the context of workplace investigations." *Lawless v. Estrella*, 99 Mass. App. Ct. 16 (2020), citing *Sovie v. North Andover*, 742 F. Supp. 2d 167, 174 (D. Mass. 2010); *Bratt*, 392 Mass. at 509.

The primary basis for Plaintiff's claim of defamation against Sharon and Maysles, are statements they allegedly made to an attorney hired by the School District to conduct a workplace investigation.[3] Plaintiff alleges they stated that she had "misgendered students." (See, Amended Complaint, ¶¶ 51-56). Statements made to an investigator during a workplace investigator are a classic case of privileged communication.

> The privilege is necessary to ensure that employees are able to report both actual and suspected misconduct without fear of being held liable for claims of defamation. Accordingly, the conditional privilege will protect the disclosure of otherwise defamatory information "when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job."

*Lawless*, 99 Mass. App. Ct. at 23.

Here, the statements were undisputably made in furtherance of the District's interest in fully investigating serious complaints. The investigation, and the statements made during the

---

[2] The privilege is not limited to statements made by an employer to an employee. *Lawless v. Estrella*, 99 Mass. App. Ct. 16, 22–23 (2020); also see *Humphrey v. National Semiconductor Corp.*, 18 Mass. App. Ct. 132, 133, (1984) (disparaging statements made by company's employee about performance of employee of another company with which it had business relationship held privileged).

[3] To the extent Plaintiff argues that statements made by Sharon and/or Maysles which were quoted in the Graphic article form the basis for her defamation claim, this argument must fail because no statements by either of these Defendants quoted in the article had a reasonably defamatory meaning. See, *Amrak Prods., Inc. v. Morton,* 410 F.3d 69, 72 (1st Cir.2005) quoting *Phelan v. May Dep't Stores Co.,* 443 Mass. 52 (2004) (As a threshold matter, the Court must determine, as a matter of law, whether any alleged statement is "susceptible to defamatory meaning" because it would tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community).

659323

course of it, were reasonably necessary to determine whether certain employees, including the Plaintiff, were fit to be employed by the District.

Once the defendant has met its burden of proving that the allegedly defamatory communication was protected by a conditional privilege, the plaintiff may only proceed if the defendant has abused the privilege and, therefore, has lost the privilege's protection. See *Dragonas v. Sch. Comm. of Melrose*, 64 Mass. App. Ct. 429, 438 (2005). To overcome the defense of a conditional privilege, a plaintiff must prove that the defamatory statement was published recklessly or with actual malice. See, *Bratt*, 392 Mass. 508, 508 (1984) (Recklessness is the minimum standard for overcoming a conditional privilege); *McAvoy v. Shufrin*, 401 Mass. 593, 597 (1988) (A plaintiff may also overcome a conditional privilege by proving by clear and convincing evidence that the defendant acted with actual malice). Communications may be found to be reckless if they were unnecessary, unreasonable, or excessively published. *Foley,* 400 Mass. 82, 95 (1987); *Bratt*, 392 Mass. 508, 512-13 (1984). Actual malice means that the defamatory words "were not spoken pursuant to the right and duty which created the privilege but were spoken out of some base ulterior motive." *Dragonas*, 64 Mass. App. Ct. 429, 438 (2005).

In *Sklar v. Beth Israel Deaconess Medical Center*, the Plaintiff, a registered nurse, brought a defamation claim against her employer based on the transmission of an audit report, which was triggered by Plaintiff's alleged wrongdoing. 59 Mass. App. Ct. 550 (2003). The court in *Sklar* determined that the defendant employer acted without malice nor was reckless in publishing the defamatory statements. *Id*; see also *Lawless* 99 Mass. App. Ct. 16 (holding that an employee had not lost the conditional privilege to publish defamatory information to an internal investigator).

In our present matter, Plaintiff has not alleged any facts to support a conclusion that Sharon or Maysles abused their conditional privilege. Plaintiff has alleged Sharon and Maysles made statements to the internal investigator about Plaintiff "misgendering students." Similarly to in

659323

*Lawless*, the statements were not a reckless publication as it was a direct response to the proposed questions of the investigator. Additionally, Plaintiff has not alleged facts to support an inference that Sharon or Maysles were reckless in their regard for the truth or acted with malice. Although Plaintiff has alleged a contentious working environment, she has not alleged any facts that would evidence either of these Defendants had ulterior motives in making these statements, nor that they acted with a reckless disregard for the truth.

> **B.** *Defamation claim against Diego Sharon based on a performance evaluation does not give rise to defamation claim because Sharon's statements were privileged.*

Plaintiff alleges an alternative basis for defamation against Diego Sharon based on statements made in her employment evaluation. She alleges that:

> Sharon then put together a pretextual evaluation of Plaintiff on a subject matter that he never discussed with her yet happened to align with the false allegations in The Graphic article.
>
> Defendant Sharon's evaluation was also not accurate (meaning, the number scores he gave Plaintiff in each category did not support the overall score she received), portraying Plaintiff in a negative light and including unfounded allegations about misgendering students.

(See, Amended Complaint, ¶¶ 50-51). Such an evaluation is again privileged speech. Principals are required by statute to evaluate their subordinates, and this action indisputably serves Defendant's legitimate interest in the fitness of Plaintiff to perform her job, just as the conditional privilege intends. See, M.G.L. c. 71 § 38 (requiring the evaluation of teachers' performance by supervisory employees). Additionally, there are no allegations to support a finding that Sharon abused the privilege. Sharon's statements in the evaluation were privileged, and this count must be dismissed on these grounds.

> **C.** *Allegations that Celia Maysles and Juile Woynar "started a rumor" are insufficient to support a claim of defamation.*

Count IV of the Amended Complaint alleges Celia Maysles and Julie Woynar defamed her in the following manner:

659323

> A rumor was spread that Plaintiff, Dykes and Santos were engaging in "conversion therapy" in their roles as guidance counselors at ARMS, created upon information and belief by Defendants Woynar and Maysles, and repeated by Defendant Sharon and the other individually named Defendants.

(Amended Complaint, ¶ 21).

To bring a defamation count, Plaintiff is required to allege sufficient facts to establish that: (1) defendants made a statement concerning her to a third party; (2) the statement was defamatory such that it could damage her reputation in the community; (3) defendants were at fault for making the statement; and (4) the statement caused her to suffer economic loss or was actionable without economic loss. See, *Edwards v. Commonwealth*, 477 Mass. 254, 262–63, (2017), citing *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629-630, (2003). Plaintiff has failed to plead sufficient facts to support these elements.

When bringing a claim for defamation, the alleged defamatory statement must be sufficiently identified in the complaint. In *Eyal v. Helen Broad. Corp.*, The Supreme Judicial Court noted "Traditionally, courts have disfavored defamation actions". 411 Mass. 426, 430, (1991) citing, *Liguori v. Alexander,* 495 F.Supp. 641, 648 (S.D.N.Y.1980) (claim for defamation subject to dismissal unless complaint sets out defamatory statement with specificity); *National Bowl–O–Mat Corp. v. Brunswick Corp.,* 264 F.Supp. 221 (D.N.J.1967) (defendant's counterclaim for defamation dismissed for failure to set out the alleged defamatory statements with particularity, and for failure to plead the dates of the alleged publication of the statements); *Cimijotti v. Paulsen,* 219 F. Supp. 621, 622 (N.D. Iowa 1963) (defamation is a disfavored action, and must always be pled with specificity); *Foster v. United States,* 156 F. Supp. 421 (S.D.N.Y.1957) (slander complaint subject to dismissal for failure to set out the allegedly slanderous statements substantially as the defendant had uttered them). Since this ruling in *Eyal*, the pleading standard has been heightened. *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

659323

1949 (2009) ("naked assertions devoid of further factual enhancement" are insufficient to establish a plausible entitlement to relief).

In *Delle v. Worcester Telegram & Gazette Corp.*, the court ruled that the plaintiff in that matter failed to state a claim where the plaintiff had alleged that, the comment, "there was no bigger dope than [Plaintiff] . . . [was,] [u]pon information and belief, . . . published by an employee and/or agent of the [Defendant] for the purpose of causing embarrassment, humiliation, and ridicule of [Plaintiff's] professional abilities." 2011 WL 7090709 (Mass. Super. Sept. 14, 2011). The court deemed this allegation was not sufficient to establish a claim for relief in a defamation action:

> [Plaintiff's] allegation rests on unspecified "information and belief." It is entirely devoid of detail or elaboration. Thus, it amounts to no more than the "labels and conclusions" that are insufficient to establish a plausible entitlement to relief under the recently-revised standard governing motions to dismiss.

*Delle*, 2011 WL 7090709, at *4.

The allegations in Plaintiff's Amended Complaint fall woefully short of adequately pleading a claim of defamation on this theory. In stating with the passive voice that "a rumor was spread," and that the source of the rumor was Maysles and Woynar "upon information and belief," the Plaintiff fails to allege sufficient facts to support a defamation claim. The Amended Complaint does not identify what statement was made by Maysles or Woynar, to whom the statement was made, or in what manner it was published. Instead, it makes an unsupported allegations that Maysles and Woynar were the source of the rumor, with no allegations pled in support of that conclusion.

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss Count II and Count IV of the Plaintiff's Amended Complaint.

659323

RESPECTFULLY SUBMITTED

THE DEFENDANTS
AMHERST-PELHAM REGIONAL
SCHOOL DISTRICT, DIEGO SHARON
SARA BARBER-JUST, MARTA GUEVARA
MICHAEL MORRIS, CELIA MAYSLES,
and JULIE WOYNAR

Dated:  October 15, 2024         By: */s/ Hunter S. Keil*
Hunter S. Keil, Esq., BBO No. 687979
   hkeil@robinsondonovan.com
Robinson Donovan, P.C.
1500 Main Street, Suite 2300
Springfield, Massachusetts  01115
Phone (413) 732-2301

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 15th day of October, 2024.

*Subscribed under the penalties of perjury.*

*/s/ Hunter S. Keil*
Hunter S. Keil

659323