UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
TANIA CABRERA,                                     )
    Plaintiff,                                              )
v.                                                                )
AMHERST-PELHAM REGIONAL         )
SCHOOL DISTRICT,                                   )
DIEGO SHARON,                                       )  C.A. 3:24-cv-30031KAR
SARA BARBER-JUST,                                )
MARTA GUEVARA, MICHAEL MORRIS )
CELIA MAYSLES and JULIE WOYNER, )
Individually and in their capacities as      )
Employees of the                                     )
    Defendants                                            )
_____)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS**

    I.      INTRODUCTION

Plaintiff filed a civil rights action against the Amherst-Pelham Regional School District, Diego Sharon, Sara Barber-Just, Marta Guevara, Michael Morris, Celia Maysles, and Julie Woyner as a result of employment discrimination, claiming religious discrimination under and retaliation under Title VII, violation of Equal Protection, violations of Free Exercise and defamation. Defendants now move to dismiss Counts II, Retaliation, and IV, Defamation, in accordance with Fed. R. Civ. P. 12(b)(6).

Plaintiff's allegations are straightforward. Defendants knew of Plaintiff's Christian beliefs and sought to get her fired because of these beliefs. It is Defendants' opposition to these beliefs that formed the basis of Defendants publishing of false statements about Plaintiff through conversation, email, and a

1

school newspaper article that the Plaintiff, in her role as a guidance counselor, engaged in "conversion therapy," among other false statements.

## II.   BACKGROUND

On April 25, 2023, Defendant Michael Morris had a "department meeting" with select guidance counselors. (Am. Compl., ¶22). In the meeting were Plaintiff and the only other known Christian guidance counselors, Delinda Dykes and Hector Santos. (Am. Compl., ¶24). Defendant Morris then stated that there were rumors of "conversion therapy" occurring on a group of transgender students. (Am. Compl., ¶23). This false rumor was spread by Defendants Maysles and Woyner. (Am. Compl., ¶21). Santos asked for an investigation in order to clear their names from the spread of these false rumors. (Am. Compl., ¶25). However, Defendant Morris stated there would be no need for an investigation, as the rumors were clearly untrue. (Am. Compl., ¶26, 28). Further, Defendant Morris and Doreen Cunningham, the director of Diversity and Inclusion in Amherst Regional Middle School (ARMS), assured Dykes, Santos and Plaintiff that they would face no punishment. (Am. Compl., ¶26).

However, once Defendant Barber-Just found out that these three counselors received no punishment, she emailed Defendants Morris, Guevara, and Sharon on April 27, 2023, about an article alleging transphobia at ARMS in the *Hampshire Gazette*. (Am. Compl., ¶29). Defendant Barber-Just also shared with them a social media post via email that was "reposted" by Santos, which was Christian in nature, suggesting he should lose his job. (Am. Compl., ¶31, 32). Santos and Dykes were

then placed on leave for a Title IX investigation on May 8, 2023. (Am. Compl., ¶33). The very next day, Defendant Barber-Just defamed the three Christian counselors in an article in the school newspaper, *The Graphic*. (Am. Compl., ¶34). Defendant Barber-Just published the article even after Defendant Morris informed her of the ongoing investigation of Santos and Dykes and that the allegations were just rumors **and she was specifically asked not to publish the article**. (Am. Compl., ¶37, 38).

On May 10, 2023, Defendants Sharon and Morris put Plaintiff on administrative leave for her own safety and told Plaintiff she was not under any investigation for Title IX violations. (Am. Compl., ¶43). Plaintiff was not given any written explanation as to why she was placed on leave. (Am. Compl., ¶44). Defendants then sent a letter to the Plaintiff on May 30, 2023, stating that her contract of employment would not be renewed for the upcoming school year. (Am. Compl., ¶47). Because of this, Plaintiff filed a grievance with the union on June 23, 2023, as the Defendants did not properly evaluate the Plaintiff and continued to weaponize the false rumors about her misgendering students. (Am. Compl., ¶48, 51). Three days after filing the grievance, and in clear retaliation against the Plaintiff, the Defendants placed Plaintiff under investigation for supposed Title IX violations. (Am. Compl., ¶49). After the investigation, the Plaintiff was obviously cleared of any violations, as there existed no evidence that Plaintiff had committed any wrongdoing. (Am. Compl., ¶55).

### III. LEGAL STANDARD

Rule 12(b)(6) is liberally construed in favor of the plaintiff. The Court accepts allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Campagna v. Mass. Dep't of Env't Prot.,* 334 F.3d 150, 154 (1st Cir. 2003); *In re Colonial Mortgage Bankers Corp.,* 324 F.3d 12, 15 (1st Cir. 2003); *Frazier v. Fairhaven School Com.,* 276 F.3d 52, 56 (1st Cir. 2002); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001); *Berezin v. Regency Sav. Bank*, 234 F.3d 68, 70 (1st Cir. 2000); *Tompkins v. United Healthcare of New England, Inc.*, 203 F.3d 90, 92 (1st Cir. 2000).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6). A Plaintiff's factual allegations must only "be enough to raise a right to relief above the speculative level ... [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ...." *Bell Atlantic Corp v. Twombly,* 127 S.Ct., 1969 (2007).

Dismissal is only appropriate if the complaint fails to establish one "material element necessary to sustain recovery under some actionable legal theory." *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005) (internal citation omitted).

## IV. ARGUMENT

### A. TITLE VII RETALIATION

In order to establish a *prima facie* case for retaliation under 42 U.S.C. § 2000e, a plaintiff must meet three elements. "First, the plaintiff must show that [s]he engaged in a protected activity. Second, the plaintiff must demonstrate [s]he suffered a materially adverse action, which caused [her] harm, either inside or outside of the workplace. The impact of this harm must be sufficient to dissuade a reasonable worker from making or supporting a charge of discrimination. Third, the plaintiff must show that the adverse action taken against [her] was causally linked to [her] protected activity." *Mariani-Colon v. Dept. of Homeland Sec. ex rel. Chertoff,* 511 F.3d 216, 223 (1st Cir. 2007), citing to *Dixon v. Int'l Bhd. of Police Officers,* 504 F.3d 73, 81 (1st Cir. 2007) (internal citations omitted). Further, Plaintiff need not show "that the conditions [they] opposed actually amounted to a violation of Title VII." *Fantini v. Salem State Coll.,* 557 F.3d 22, 32 (1st Cir. 2009). The plaintiff needs to "demonstrate only that they had a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" *Id.* citing to *Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 134 (2nd Cir. 1999). Plaintiff's pleadings contain more than sufficient facts to support the elements of a retaliation claim.

### a. Plaintiff was Engaged in a Protected Activity

An employee has engaged in activity protected under Title VII, for purposes of a retaliation claim, "if she has either: (1) opposed any practice made an unlawful

5

employment practice by Title VII; or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Rodriguez-Rivas v. Police Dept. of Puerto Rico*, 699 F.Supp.2d 397 (D. P.R. 2010). Plaintiff, after finding out that the Defendants would not renew her contract for the next school year, filed a grievance with her union stating that her non-renewal was a product of improper evaluation and cause. Plaintiff held a good faith "reasonable belief that the practice the employee is opposing violates Title VII." *Wyatt v. City of Boston,* 35 F.3d 13, 15 (1st Cir. 1994). On May 10, 2023, Plaintiff was told by Defendant Sharon and Morris that she would be placed on paid administrative leave for her own safety, and that she was not under investigation. However, on May 30, 2023, Plaintiff was then told that her contract would not be renewed for the upcoming school year. Plaintiff opposed the Defendants' non-renewal of her contract by filing a grievance with her union on June 23, 2023. Three days later, in clear retaliation, Plaintiff was sent a letter stating that she was under investigation for supposed Title IX violations. Then, after that, Defendant Sharon put together a sham evaluation of Plaintiff. Defendants clearly did not renew her contract with the school on the basis of her religion and the beliefs that they believed she held. "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual…because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2. Further, 42 U.S.C. § 2000e-3(a) makes it "an unlawful employment practice for an employer to discriminate against any of his employees… [1] because he has opposed any practice

6

made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). This is known as the "opposition clause" of Title VII. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,* 555 U.S. 271, 274 (2009). The filing of a complaint or grievance falls within this opposition clause, as seen in *Doherty v. Donahoe*, 985 F. Supp. 2d 190, 201 (D. Mass. 2013) where plaintiff's filing of an EEO complaint fell within the reach of Title VII's opposition clause. "For example, the filing of the EEO age discrimination complaint…easily falls within the reach of this clause as protected activity." *Doherty v. Donahoe*, 985 F. Supp. 2d 190, 201 (D. Mass. 2013). Plaintiff's filing of a union grievance for her non-renewal can easily be classified as a protected activity.

### b. Plaintiff Suffered a Materially Adverse Action

Plaintiff suffered a materially adverse action. In sequence, the Defendants sent Plaintiff a non-renewal of her employment contract. Prior to being terminated, she filed a grievance. In response, she was placed under Title IX investigation based on meritless rumors, smeared publicly and given a sham evaluation. Defendants Sharon and Amherst's actions were "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57 (2006).

Examples of adverse employment actions include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." *Marrero v. Goya of P.R., Inc.,* 304 F.3d 7, 23 (1st Cir. 2002). "Typically, the employer

must either (1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities." *Blackie v. State of Me.,* 75 F.3d 716 (1st Cir. 1996) citing to *Crady v. Liberty Nat. Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir. 1993); *Connell v. Bank of Boston,* 924 F.2d 1169, 1179 (1st Cir. 1991). Further, the First Circuit has stated that adverse actions can include internal investigations and dismissal. *Rivera-Jimenez v. Pierluisi,* 362 F.3d 87, 94 (1st Cir. 2004). Even the threat of an internal investigation can qualify as an adverse employment action because it can "deter an ordinary employee from making complaints." *Stuart v. City of Gloucester*, No. 18-CV-11877-ABD, 2021 WL 4466476 (D. Mass. Sept. 30, 2021). A reasonable jury could find that an investigation is an adverse employment action because "[a] person is unlikely to risk having his or her conduct scrutinized to an extent that other employees are not subjected to." *Gutwill v. City of Framingham*, No. 16-CV-12191, 2020 WL 360486, at 9 (D. Mass. Jan. 22, 2020).

Once Plaintiff filed her grievance, Defendants placed her under investigation only three days later, supported only by Defendants' own false statements about Plaintiff. This constitutes adverse action.

### c. Plaintiff's Adverse Action was Causally Linked to Her Protected Activity

Plaintiff alleged that she was treated differently than other individuals, that the adverse action, including the investigation and "evaluation" she received which supported her termination parroted the false statements spoken against her, and that this action was within three days of her filing her grievance. "[M]ere temporal

8

proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly holds that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273, citing to *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1253 (10th Cir. 2001). Here, Plaintiff was placed under investigation in three days. One month between the protected conduct and adverse action has been found sufficient to establish causation at the prima facie stage. *Calero-Cerezo v. U.S. Dept. of Justice,* 355 F.3d 6, 26 (1st Cir. 2004). "Temporal proximity can create an inference of causation in the proper case…to draw such an inference, there must be proof that the decisionmaker knew of the plaintiff's protected conduct when he or she decided to take the adverse employment action." *Pomales v. Celulares Telefonica, Inc.,* 447 F.3d, 79, 84 (1st Cir. 2006), *Stratton v. Bentley Univ.,* 113 F.4th 25 (1st Cir. 2024). Additional indirect evidence can demonstrate a causal connection, and may include, "evidence of differential treatment in the workplace…and comments by the employer which intimate a retaliatory mindset." *Osher v. Univ. of Maine Sys.,* 703 F.Supp.2d 51, 68 (D. Me. 2010), citing to *Mesnick v. General Elec. Co.,* 950 F.2d 816, 828 (1st Cir. 1991).

If not for Plaintiff's grievance letter to the union, she would not have been unnecessarily placed under Title IX investigation. This satisfies the "but-for causation" standard for Title VII retaliation claims, applied in *University of Texas Southwestern Medical Center v. Nassar,* 570 U.S. 338 (2013). Therefore, Plaintiff, through the facts alleged, has successfully demonstrated that she has met the

9

elements of a retaliation claim under Title VII.

### B. DEFAMATION WITH REGARD TO DEFENDANT BARBER-JUST

In order to state a claim for defamation under Massachusetts law, the Plaintiff must show, "(1) that '[t]he defendant made a statement, concerning the plaintiff, to a third party' (2) that the statement was defamatory such that it 'could damage the plaintiff's reputation in the community' (3) that '[t]he defendant was at fault in making the statement'; and (4) that '[t]he statement either caused the plaintiff economic loss or is actionable without proof of economic loss.'" *Shay v. Walters*, 703 F.3d 76, 81 (1st Cir. 2012) quoting to *Ravnikar v. Bogojavlensky,* 438 Mass. 627, 629-630 (2003). Further, there are four types of statements that are actionable without proof of economic loss. These include, "'statements that constitute libel…; statements that charge the plaintiff with a crime; statements that allege the plaintiff has certain diseases; statements that may prejudice the plaintiff's profession or business.'" *Alharbi v. Beck,* 62 F. Supp. 3d 202, 206 (D. Mass. 2014) quoting to *Ravnikar v. Bogojavlensky,* 438 Mass. at 630 (2003).

#### a. Defendant Barber-Just Statements Satisfy the Elements of Defamation

First, Plaintiff alleges that Defendant Barber-Just did, in fact, make the false statements in the article, *and* she had the power and authority to publish the statements. (Am. Compl. ¶37, ¶38, ¶39 and ¶91). These statements in the article have in fact damaged Plaintiff's reputation in the community, caused Plaintiff economic harm, and are actionable even without economic loss. (Am. Compl., ¶103). Barber-Just was told not to publish the article based solely on these

unsubstantiated rumors but did it anyways. (Am. Compl. ¶37-38). Since Plaintiff's termination, she has found it difficult to find work because her name appears connected to these events and statements when searched on "Google." (Am. Compl., ¶105). People in the community formed a lesser opinion of the Plaintiff because of the alleged defamatory statements made about her. (Am. Compl., ¶106). Plaintiff's difficulty in finding work constitutes economic harm.

### b. Defendant Barber-Just is not Immune from Liability

First, given that Plaintiff's Amended Complaint makes no mention of students authoring the article, any immunity that Barber-Just would claim is not available to her. Again, Plaintiff does not believe for one second that Barber-Just did not orchestrate and author the hit piece against her, as is alleged in her Amended Complaint. However, Defendants contend that Defendant Barber-Just is protected from liability under M.G.L. c. 71 § 82, which purports to shield Barber-Just from liability for statements made by students. This argument fails for three reasons: (1) Barber-Just made the statements, (2) Barber-Just was specifically asked not to publish the statements by the school and did it anyway, and (3) the speech was disruptive. This type of speech caused disruption within the school system, as it resulted in multiple Title IX investigations, uproar within the community, and Plaintiff's eventual non-renewal despite her being cleared of any wrongdoing. In other words, this statute is misused. Barber-Just is not being held liable for something her students said in the exercise of their free speech, but rather something she said, or at the very least, was specifically told *not* to publish. In

short, even if she wanted to claim that the students published this piece, she would need to show that she had no control over its publication.

"Defamation is the intentional or reckless publishing, without privilege to do so, of a false statement of fact which causes damage to the plaintiff's reputation." *Elicier v. Toys "R" Us, Inc.,* 130 F. Supp 2d 307, 310 (D. Mass 2001) citing to *Correllas v. Viveiros,* 410 Mass. 314, 319 (1991). Defendant Barber-Just was, at the very least, reckless in publishing the article as she was asked not to publish the article. Defendant Barber-Just cannot shield herself from liability by using the journalism students, whose publication she has control over, as a way to dodge liability for defamation.

### C. DEFAMATION WITH REGARDS TO DEFENDANT'S SHARON, MAYSLES, AND WOYNER

#### a. Defendants Sharon and Maysles Abused Their Conditional Privilege

Defendants' privilege claim also fails, because Plaintiff's Amended Complaint clearly spells out that these statements were made for the sole purpose of getting her fired. (Am. Compl. ¶19). Defendants conditional privilege, is defeated "by a showing of malice." *Noonan v. Staples, Inc.,* 556 F.3d 20, 31 (1st Cir. 2009) citing *Dragonas v. Sch. Comm. of Melrose,* 64 Mass. Apt. Ct. 429 (2005). The court in *Noonan* defines malice as a base ulterior motive with an intention to injure others. **The named defendants' sole purpose in defaming Plaintiff was to get her fired**, as alleged in ¶19 of Plaintiff's Amended Complaint. Thus, taken as true, Plaintiff's Complaint alone defeats any claim of privilege at the Motion to Dismiss stage.

### b. Defendants Maysles and Woyner's Statements

Plaintiff asserts that Defendants Maysles and Woyner created the false rumor that the Plaintiff was engaged in conversion therapy, for the purpose of getting Plaintiff fired. (Am. Compl. ¶19, 21). This is defamation. See *Shay,* supra. Thus, for purposes of a 12(b)(6), Defendants cannot claim that Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted.

### V.   CONCLUSION

Plaintiff requests that this Court DENY Defendant's Motion to Dismiss. Plaintiff pleaded sufficient facts that allege retaliation under Title VII, in that she was engaged in a protected activity, faced adverse action and that the adverse action was causally connected to the protected activity. Additionally, Plaintiff pleaded sufficient facts with respect to defamation, in that Plaintiff's Amended Complaint satisfied all of the required elements of a defamation claim, and that no privilege can yet be applied prior to fact discovery. For the above reasons, Defendants' Motion should be denied.

Plaintiff Tania Cabrera

By her attorney,

　　/s/ Ryan P. McLane
Ryan P. McLane (BBO # 697464)
McLane & McLane, LLC
269 South Westfield Street
Feeding Hills, MA 01030
Ph. (413) 789-7771
Fax (413) 789-7731
E-mail: ryan@mclanelaw.com